-O-

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN HARRIS, | ) Case No. EDCV 08-1440-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /
/ / /
/ / /

**I.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 7, 8.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly developed the record regarding Plaintiff's mental impairment;
2. Whether the ALJ considered the severity of Plaintiff's mental impairment;
3. Whether the ALJ considered the mental and physical demands of Plaintiff's past relevant work; and
4. Whether the ALJ appropriately established that Plaintiff could perform the jobs of electronics worker and bench assembler.

(JS at 2-3.)

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# III.

# DISCUSSION

**A.  The ALJ Fully and Fairly Developed the Record.**

Plaintiff contends that the ALJ failed to properly develop the record by failing to obtain a psychiatric or psychological evaluation of Plaintiff to assess his mental impairment. (JS at 3-4.) The Court disagrees.

The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); see also Tonapetyan v. Halter, 242 F.3d, 1144, 1150 (9th Cir. 2001); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). The duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests. Celaya, 332 F.3d at 1183; Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir.1992); see also Burch v. Barnhart, 400 F.3d 676, 682-83 (9th Cir. 2005) (distinguishing Burch from Celaya at least in part, based on the fact that the plaintiff in Burch was represented by counsel). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." See Tonapetyan, 242 F.3d at 1150.

Here, the record contains no ambiguous or inadequate evidence regarding Plaintiff's mental impairment, as there is no credible evidence to support the alleged mental impairments. As a result, the ALJ's duty to develop the record as to ambiguous evidence is not triggered. See Tonapetyan, 242 F.3d at 1150; see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). The ALJ noted that "[u]nder direct and leading questioning by his representative, the claimant agreed he has concentration problems due to pain and feels depressed." (AR at 14, 28-29) Plaintiff, nevertheless, testified that he never received any mental health treatment during the relevant period. (Id. at 29.) Additionally, Plaintiff applied for disability

insurance benefits alleging that he was unable to work due to a "herniated disc-back injury." (Id. at 44, 72.) There is no indication that Plaintiff alleged any mental impairments in his application for disability benefits. (Id.)

Moreover, the objective medical evidence, including the treating and consultative examiners' opinions, does not support a finding of an alleged mental impairment, or any functional limitations due to Plaintiff's cognitive functioning. The only evidence suggesting a mental impairment is Plaintiff's testimony, elicited by his attorney, claiming he suffered from crying spells, concentration issues, and depression. (Id. at 28-29.) The ALJ, however, properly discounted Plaintiff's credibility based on discrepancies between Plaintiff's complaints and the objective medical evidence, and the implausibility of Plaintiff's daily activities.[3] (Id. at 13-15.) Despite the negative credibility finding, the ALJ still provided Plaintiff's subjective complaints with "generous consideration" and "significant weight."[4] (Id. at 14.)

Finally, the record was adequate for the ALJ to adjudicate Plaintiff's disability application, as the ALJ relied upon the objective medical evidence, including the findings of the treating and consultative examiners, and Plaintiff's testimony. (AR at 10-17.) Thus, Plaintiff fails to explain how the medical record was ambiguous or inadequate regarding his alleged mental impairments. See

---

[3] Plaintiff does not dispute the ALJ's credibility finding. Thus, the Court will not address that issue

[4] Even assuming that the ALJ improperly discounted Plaintiff's credibility, Plaintiff fails to allege disabling impairments that have lasted or can be expected to last for a continuous period of not less than twelve months. See 20 C.F.R. § 404.1505(a) (Under the regulations, a person is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"); see also Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).

Mayes, 276 F.3d at 458 (citing 42 U.S.C. § 423(d)(5) (Supp. 2001) and Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)) (plaintiff has a duty to prove that she is disabled).

Plaintiff cites to Regennitter v. Commissioner of the Soc. Sec. Admin, 166 F.3d 1294, 1299-1300 (9th Cir. 1999), and Nguyen v. Chater, 100 F.3d 1462, 1464-65 (9th Cir. 1996), for the proposition that an ALJ may not reject a plaintiff's claim of mental impairment for lack of treatment. (JS at 4.) However, both of these cases addressed plaintiffs who had been diagnosed with mental impairments with supporting medical evidence of such impairments. See id. There is no indication in the record that any of Plaintiff's treating or consultative physicians diagnosed Plaintiff with any mental impairment. Thus, the ALJ did not err in finding that no evidence of a medically determinable mental impairment exists here.

Based on the foregoing, the Court finds that the ALJ fully and fairly developed the record with respect to Plaintiff's alleged mental impairments. Thus, there was no error.

**B.** **The ALJ Did Not Err by Failing to Consider the Severity of Plaintiff's Alleged Mental Impairment.**

Plaintiff contends that the ALJ failed to properly consider the severity of his mental impairment. (JS at 7-8.) As stated above, the ALJ was not required to develop the record further regarding Plaintiff's alleged mental impairment, as Plaintiff offered no objective or credible evidence of any mental impairment. See supra, Discussion Part III.A. Accordingly, the Court finds that the ALJ did not err by failing to consider the severity of Plaintiff's alleged mental impairment.

///

///

**C.** **The ALJ's Error to Consider the Mental and Physical Demands of**

**Plaintiff's Past Relevant Work Was Harmless.**

Plaintiff argues that the ALJ's determination that Plaintiff was capable of performing his past relevant work as a security guard was erroneous because the ALJ failed to properly consider the mental and physical demands of his past relevant work. (JS at 8-12.)

**1.     Background.**

In his disability application, Plaintiff reported that he had worked as a general laborer and security guard. (AR at 73-74.) At the hearing, the ALJ engaged in the following dialogue with the vocational expert ("VE"):

> ALJ: Assuming a hypothetical individual of claimant's age, education, prior work experience. [sic] Assume this person can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk 4 hours out of an 8 hour day, sit 8 hours out of an 8 hour day, no pushing or pulling with the legs, no vibration, occasional climbing, no balancing, occasional stooping, kneeling, crouching, and crawling. First question, could such a hypothetical individual perform any of claimant's past work?
>
> VE: Well, I think that security [guard] could be performed with eroded numbers, eroding at 90 percent and that would be because of the less than full range of light [work]. That would be the erosion.
>
> ALJ: What would the numbers be?
>
> VE: 90 percent erosion after the erosion, there would be 3,000 positions in the region and more than 500,000 nationally?
>
> ALJ: How many?
>
> VE: No, that's not correct. . . . 50,000 nationally.
>
> ALJ:  With regard to security guards, are there some security guard positions where the security guard is sitting most of the time?
>
> VE: Yes, in construction site type environment.

    ALJ: Is that - - the numbers you gave me, for that type of position or - -

    VE: I was contemplating that kind of work, yes.

(Id. at 31-32.)

After the hearing and reviewing the record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, limited as follows:

> The claimant is limited to pushing and/pulling with his legs consistent with lifting and/or carrying. He is further limited to occasional climbing, stooping, kneeling, crouching, or crawling, and is precluded from balancing and work around vibrations or vibrating machinery.

(Id. at 13.) The ALJ then determined that Plaintiff could perform his past relevant work as a security guard, and that the job of security guard did not require the performance of work-related activities precluded by his RFC. (Id. at 15.) The ALJ stated:

> I find that in accordance with SSR-00-4p the vocation expert's testimony clearly resolves the question of the claimant's ability to work as a security guard, the numbers of which are eroded by 90%, but not precluded by the residual functional capacity adopted herein. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that claimant is able to perform it as is often performed. [The VE] testified that given all of these factors the claimant would be able to perform the requirements of 10% of security guard positions with 3,000 such positions in the regional economy and 50,000 in the national economy.

(Id. at 15.)

    **2.**    **Applicable Law.**

At step four of the sequential evaluation process, a claimant must establish

that his severe impairment or impairments prevent him from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). The regulations explain the step-four evaluation:

> If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant has the burden of showing that he can no longer perform his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e); see also Clem v. Sullivan, 894 F.2d 328, 331-32 (9th Cir. 1990). Although the burden of proof lies with the claimant, the ALJ still has a duty to make requisite factual findings to support his conclusion as to whether plaintiff can perform his past relevant work. See Pinto, 249 F.3d at 844 (despite the fact that the claimant has the burden at step four, "the ALJ is [not] in any way relieved of his burden to make the appropriate findings to insure that the claimant really can perform his or her past relevant work"); see also Henrie v. U.S. Dept. Of Health & Human Serv., 13 F.3d 359 (10th Cir. 1993) (recognizing the tension created between the mandate of SSR 82-62 and the claimant's burden of proof, and finding that the ALJ's duty is one of inquiry and factual development while the claimant continues to bear the ultimate burden of proving disability).

In order to determine whether a claimant has the RFC to perform his past relevant work, the ALJ must evaluate the work demands of the past relevant work and compare them to the claimant's present capacity. Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986). Social Security Ruling ("SSR")[5] 82-62 states that a

---

[5] Social Security Rulings are issued by the Commissioner to clarify the
(continued...)

determination that a claimant has the capacity to perform a past relevant job must contain among the findings the following specific findings of fact: (1) a finding of fact as to the claimant's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the claimant's RFC permits him to return to the past job or occupation. See SSR 82-62; see also Pinto, 249 F.3d at 844-45.

A finding that a claimant is able to return to his past relevant work must be based on adequate documentation and a careful appraisal. Dealmeida v. Bowen, 699 F. Supp. 806, 807 (N.D. Cal. 1988) ("Without the proper foundation as to what plaintiff's past relevant work entailed, the ALJ's subsequent determination that plaintiff retained the residual functional capacity to perform that job is not supported by substantial evidence."). This determination requires a careful appraisal of the claimant's statements, the medical evidence, and, in some cases, corroborative information such as the Dictionary of Occupational Titles ("DOT"). SSR 82-62. Adequate documentation must be obtained to support the decision, including "factual information about those work demands which have a bearing on the medically established limitations." Id. Thus, "[d]etailed information about . . . mental demands and other job requirements must be obtained as appropriate." Id.; see also Sivilay v. Apfel, 143 F.3d 1298, 1299 (9th Cir. 1998) (remanding to ALJ to "investigate fully the demands of the applicant's past work and compare them to the applicant's residual mental and physical capabilities"). Any determination regarding a claimant's ability to perform past work "must be developed and explained fully in the disability decision" and "every effort must be made to secure

---

(...continued)
Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62.

### 3. Analysis.

In this case, the ALJ satisfied the first and third requirements above in that he made sufficiently specific findings of fact regarding Plaintiff's RFC,[6] and that Plaintiff's RFC permits him to return to his past work as a security guard. The ALJ, however, failed to make the requisite findings of fact regarding the physical and mental demands of Plaintiff's past work as a security guard. See SSR 82-62.

In support of his conclusion that Plaintiff is capable of performing his past relevant work as a security guard, the ALJ relied upon the testimony of the VE that an individual with the same vocational factors and RFC as Plaintiff could perform work as a security guard. (AR at 15, 31-32.) Given Plaintiff's ability to perform a limited range of light work, the VE eroded 90% of the security guard positions and determined that Plaintiff could perform 10% of the positions. (Id. at 31.) The ALJ also clarified that the VE suggest positions where a security guard would be able to sit most of the time. (Id. at 32.) However, the ALJ failed to specify Plaintiff's physical and mental demands associated with his past work. The ALJ was required to develop an adequate record regarding the physical and mental demands of Plaintiff's past relevant work and failed to do so. See Villa, 797 F.2d at 797; see also Dealmeida, 699 F. Supp. at 807.

Despite the ALJ's error in identifying the physical and mental demands of Plaintiff's past work, any error committed by the ALJ was harmless because the ALJ identified other types of substantial, gainful work existing in the national

---

[6] Plaintiff only challenges the ALJ's RFC assessment with regard to his alleged mental limitations. (JS at 3-4, 7-8.) As discussed above, the Court determined that the ALJ properly found that Plaintiff's did not have a severe mental impairments, and thus, properly excluded any mental limitations from the RFC determination. See supra, Discussion Part III.A-B.

economy that Plaintiff could perform.[7]  (AR at 16); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability).  At the hearing, the ALJ asked the VE to identify other jobs that Plaintiff can still perform, considering his RFC, age, education and work experience.  (AR at 32.)  The VE testified that Plaintiff could perform the following work: (i) electronics worker, with 1,500 positions regionally and 10,000 nationally (DOT § 726.687-010); (ii) bench assembler, with 90 percent erosion due to standing and walking limitations, with 4,000 positions regionally and 40,000 nationally (id. § 706.684-042); and (iii) cashier, eroded 90 percent, with 3,800 positions regionally and 78,000 nationally (id. § 211.462-010).  (AR at 32.)  The VE testified that the proposed positions are consistent with the DOT.  (Id.)  In his decision, the ALJ relied upon the VE's testimony to determine that Plaintiff could perform the jobs of electronics worker, bench assembler, and cashier, if he was unable to perform his past relevant work.[8]  (AR at 16.)

---

[7] The ALJ also employed the use of the Medical-Vocational Guidelines ("Guidelines") to determine that Plaintiff is not disabled.  (AR at 16-17.)  However, the ALJ erroneously employed the Guidelines as Plaintiff is not able to perform the full range of jobs in the light-work category.  Tackett, 180 F.3d 1094, 1101 (9th Cir. 1999).

[8] As previously discussed, the ALJ properly determined Plaintiff's RFC.  See supra, Discussion Part III.A-B.  The hypothetical that the ALJ posed to the VE included those restrictions the ALJ found to exist, and thus, the VE testimony constituted substantial evidence.  Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995) (VE's testimony constitutes substantial evidence if the hypothetical posed considered all of plaintiff's limitations); Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)).  To the extent that Plaintiff argues the ALJ posed an incomplete hypothetical, the Court finds there was no error.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he
(continued...)

Based on the foregoing, the Court finds that while the ALJ erred in determining that Plaintiff could perform his past relevant work, the error was harmless, as the ALJ identified other types of substantial, gainful work existing in the national economy to support the finding of non-disability. Curry, 925 F.2d at 1131.

**D.    The ALJ Properly Determined Plaintiff Could Perform Other Types of Substantial, Gainful Work Existing in the National Economy.**

As stated above, the VE identified three other types of substantial, gainful work existing in the national economy: electronics workers, bench assembler, and cashier. (AR at 32.) After reviewing the record and determining Plaintiff's RFC, the ALJ found Plaintiff not disabled because he could perform this other work. (AR at 16-17.) Plaintiff's final argument is that the ALJ improperly determined Plaintiff could perform the jobs of electronics worker and bench assembler, as both jobs require the use of power tools, pneumatic impact wrench, clinching gun, or rivet press. (JS at 14-15.) Plaintiff argues that these jobs require physical demands exceeding his RFC, as he is precluded from working around vibrations or vibrating machinery. (Id.)

> The DOT describes the job functions of electronics worker as follows:
> Performs any combination of following tasks to clean, trim, or prepare components or parts for assembly by other workers . . . . Trims flash from molded or cast parts, using cutting tool or file. . . . Prepares wires for assembly by measuring, cutting, stripping, twisting, tinning, and attaching contacts, lugs, and other terminal devices, using handtools, and power tools and equipment. Positions and fastens together parts, such

---

[8](...continued)
found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.").

> as laminates, electron tube mounts and cages, variable capacitor rotors and stators, paper loudspeaker cones, faceplates, and shells and cases for various electronic components, using handtools and power tools. . . . Disassembles and reclaims parts, using heating equipment and handtools.

DOT § 726.687-010.

The DOT describes the job functions of bench assembler as follows:

> Assembles parts to form yard and garden care equipment components, such as reels, steering handles, and gear boxes, following specifications and using handtools and power tools: Fits parts of components together and fastens them with bolts and cotter pins, using handtools and pneumatic impact wrench.  Seats inserts, such as bearings and grease seals in hubs and sleeves, using power press.  Rivets reel blades to hubs on reel shaft, using pneumatic clinching gun, and sets rivets, using rivet press [RIVETING-MACHINE OPERATOR (any industry) I].  May be designated according to part assembled as Reel Fabricator (agric. equip.).

Id. § 706.684-042.

While the descriptions above both require the use of powertools and other handtools, which would seemingly constitute vibrating machinery, the DOT provides a specific function-by-function description where the DOT specifically states that the "activity or condition" of vibration does not exist in both positions. Id. §§ 726.687-010, 706.684-042.  Even if the DOT function-by-function descriptions for bench assembler and electronics worker are inconsistent with the general descriptions, the ALJ still identified the job of cashier as an additional type of substantial, gainful work existing in the national economy that Plaintiff could perform.  (AR at 16-17.)  Notably, Plaintiff does not argue that he is precluded from performing the job of cashier.  Thus, even if the ALJ erred in determining that Plaintiff could perform the jobs of electronics worker or bench assembler, any

error is harmless, as Plaintiff can still perform the job of cashier. Curry, 925 F.2d at 1131. Accordingly, the Court finds that the ALJ sustained his burden of proving there is work in the economy that Plaintiff can perform.

## IV.
## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: October 30, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge